UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KEVIN A. GARY,

        Petitioner,

                                     CASE NO. 2:07-CV-12010

v.                               CHIEF JUDGE BERNARD A. FRIEDMAN
                               MAGISTRATE JUDGE PAUL J. KOMIVES

SHIRLEE A. HARRY,

        Respondent.[1]
_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *The Plea Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     C.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     E.    *Plea Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
                a.  Voluntariness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
                b.  Innocence and Withdrawal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     F.    *Antecedent Constitutional Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          1.    *Illegal Arrest* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
          2.    *Suppression of Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
          3.    *Double Jeopardy* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
     G.    *Ineffective Assistance of Counsel Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
     H.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

_____

[1]By Order entered this date, Shirlee A. Harry has been substituted in place of Hugh Wolfenbarger as the proper respondent in this action.

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.     REPORT:

A.      *Procedural History*

1.      Petitioner Kevin A. Gary is a state prisoner, currently confined at the Muskegon Correctional Facility in Muskegon, Michigan.

2.      On September 19, 2005, petitioner was convicted of one count of aggravated stalking, MICH. COMP. LAWS § 750.441i, pursuant to his plea of *nolo contendere* in the Oakland County Circuit Court.  On October 11, 2005, he was sentenced to a term of time served (303 days) and to a term of five years' probation.  Prior to sentencing, petitioner unsuccessfully moved to withdraw his plea.

3.      On April 11, 2006, the trial court revoked petitioner's probation and sentenced him to a term of 13 months' to 5 years' imprisonment.

4.      Meanwhile, petitioner sought leave to appeal in the Michigan Court of Appeals raising, through counsel, the following claim:

> WHETHER KEVIN ANDREW GARY'S NO CONTEST (GUILTY) PLEA SHOULD HAVE BEEN WITHDRAWN BEFORE HE WAS SENTENCED.

The court of appeals denied petitioner's application for leave to appeal in a standard order, "for lack of merit in the grounds presented."  *People v. Gary*, No. 269220 (Mich. Ct. App. May 11, 2006). Petitioner did not seek leave to appeal this decision to the Michigan Supreme Court.

5.      Petitioner subsequently filed in the trial court a motion for remand, motion to reinstate probation, motion for new trial, motion to dismiss, and motion for extension of time. Principally these motions argued that petitioner was denied the effective assistance of counsel in

connection with his plea. The trial court denied the motions on February 14, 2007. Petitioner filed

a claim of appeal in the Michigan Court of Appeals. The court of appeals dismissed the claim of

appeal, explaining that a motion for relief from judgment can only be appealed through an

application for leave to appeal under MICH. CT. R. 6.509(A). *See People v. Gary*, No. 276844

(Mich. Ct. App. Mar. 29, 2007). Petitioner did not appeal this decision to the Michigan Supreme

Court.[2]

6.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on May 8, 2007. As grounds for the writ of habeas corpus, petitioner raises four claims: (1) coerced

plea; (2) evidence illegally obtained as a result of unlawful arrest; (3) suppression of exculpatory

evidence; and (4) ineffective assistance of counsel.

7.      Respondent filed her answer on November 7, 2007. She contends that petitioner's

claims are barred by petitioner's procedural default, and that the claims are without merit.

8.      Petitioner filed a reply to respondent's answer on December 10, 2007.

B.      *The Plea Proceedings*

Petitioner was convicted of aggravated stalking based on a pattern of contacts with the

victim, in violation of a restraining order. On the first day of trial, after the jury had been selected,

petitioner's counsel told the court that petitioner wished "to avail himself of the plea that's been

offered at this point, no contest for Aggravated Stalking." Trial Tr., at 71-72. Counsel also

requested that the court consider a *Cobbs* agreement sentence[3] of time served with probation. *See*

---

[2]The state court record establishes that petitioner also filed various motions and appeals relating to (a) the revocation of his probation, and (b) the Parole Board's decision denying him parole. These proceedings are not germane to the instant petition.

[3]*People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993), permits a defendant to plead guilty pursuant to the trial court's initial evaluation as to the appropriate sentence, subject to the

3

*id*. at 72.  When the court asked petitioner if that was his wish, petitioner responded, "[t]he problem is she's using old evidence from Wayne County, October the 8th, 2003, the same witnesses, the same things that she used in 2003."  *Id*.  Petitioner's counsel indicated that he explained to petitioner that the 2003 case in Wayne County was a civil proceeding for violating a personal protection order, and that the prosecutor could use that evidence in the Oakland County aggravated stalking case.  Specifically, counsel indicated "I have explained that to him and that's been his real issue but I have explained that to him that that's a civil contempt matter and it has no bearing as to whether or not there's res judicata or double jeopardy as to that particular issue."  *Id*. at 73.  The judge indicated that counsel had correctly explained the law to petitioner, and that it was up to petitioner to decide whether to plead or go to trial: "What he said is all true, but be that as it may, we have a jury sitting there.  I have no problem trying this case.  I frankly – so I want there to be no pressure on you.  If you want to plea, you can plea.  If you want a trial, you can have a trial, but I have got to know what's going on."  *Id*.  After some further discussion with petitioner about the double jeopardy issue, the court asked petitioner if he would like a recess to speak with counsel.  *See id*. at 74.

After a brief recess, petitioner's counsel again indicated that petitioner wished plead no contest to aggravated stalking, with a *Cobbs* agreement for time served plus probation.  *See id*.  Upon questioning from the trial court, petitioner indicated that he was "very much" satisfied with the advice of his attorney.  *See id*. at 76.  The court explained that the maximum possible sentence was five years' imprisonment, and that pursuant to the *Cobbs* agreement he would be sentenced to imprisonment for time already served, plus probation.  Petitioner indicated that he understood these sentencing consequences.  *See id*.  The court then explained to petitioner his rights if he went to trial

---

defendant's right to withdraw his plea if the actual sentence imposed is more severe.

that he was waiving by pleading no contest. Petitioner indicated that he understood each of his rights. *See id*. at 76-78. Petitioner denied that anyone had threatened him to obtain his plea, and that it was his decision to plead no contest. *See id*. at 78. The court relied on the preliminary examination transcript to establish a factual basis for the plea, and accepted petitioner's plea. *See id*. at 78-79.

At sentencing, petitioner indicated that the victim was lying, and that he had proof that she was stalking him. He also stated that the victim accused him of stalking her because they were having a relationship, and when it became known to her husband she tried to cover it up. He also indicated that the personal protection order which formed the basis of the aggravated stalking charge had been terminated on September 23, 2003, and that the victim had taken out a new personal protection order of which he had no notice. He claimed that, when he took his plea, the prosecutor had told him that the judge would enhance petitioner's sentence and send him to prison for two years, and that she intimidated petitioner into taking the plea. He also indicated that, in his view, the charge violated his right to be free from double jeopardy. *See* Sentence Tr., at 6-11. The court construed this statement as a request to withdraw the plea, and denied petitioner's request. *See id*. at 12. Consistent with the *Cobbs* agreement, the court sentenced petitioner to a term of 303 days in jail, with credit for 303 days served, and to a term of five years' probation. *See id*. at 11-12.

C.      *Procedural Default*

Respondent first contends that petitioner's claims are barred by petitioner's procedural default in the state courts, because petitioner failed to exhaust his claims and there is no further avenue of state court relief available. In light of the procedural history of this case in the state courts, petitioner's claim of innocence (which would provide an exception to application of the

procedural default doctrine), and the clear lack of merit to petitioner's claims, it is simpler to deny the claims on the merits. While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Thus, while the procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995). Similarly, § 2254 explicitly provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Accordingly, the Court should proceed directly to the merits of petitioner's claims.

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the

Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.     *Plea Claims*

Petitioner first raises several challenges to the validity of his plea. Although his claims are not entirely clear, construed broadly it appears that petitioner is arguing that he is entitled to habeas relief because his plea was involuntary, he is innocent of the crime, and he should have been permitted to withdraw his plea. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances.  *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).  The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea.  *See Brady*, 397 U.S. at 755; *King*, 17 F.3d at 153.  A solemn declaration of guilt by the defendant carries a presumption of truthfulness.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976).  "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  *Blackledge*, 431 U.S. at 74.  Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]"  *Mabry v. Johnson*, 467 U.S. 504, 511 (1984).  Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.  It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id*. at 508 (footnotes omitted).

2.      *Analysis*

*a. Voluntariness*

Petitioner first contends that his plea was involuntary because he was coerced by the prosecutor and his own counsel into accepting the plea.  The record, however, belies petitioner's assertions.  At the plea hearing, petitioner indicated that he had not been threatened by anyone, and that it was his own decision to plead guilty.  *See* Trial Tr., at 78.  Petitioner also indicated that he

was satisfied with the advice of counsel. *See id*. at 76. At the conclusion of the hearing, petitioner thanked the court for being fair. *See id*. at 79. These statements by petitioner, made while under oath and in open court, carry a strong presumption of truthfulness. *See Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). Where, as here, "the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (internal quotation omitted). Because petitioner indicated under oath that his plea was not coerced, and because he has presented no evidence to contradict his assertions at the plea hearing, his claim is without merit. *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) (court did not commit error in denying defendant's motion to withdraw plea where his allegations of coercion were belied by his statements at the plea hearing); *Jones v. Page*, 76 F.3d 831, 845 (7th Cir. 1996) (habeas relief not warranted where petitioner "made two clear and unequivocal statements at the plea hearing which belie the claim he is now making that he was pressured or coerced into pleading guilty."); *Otero-Rivera v. United States*, 494 F.2d 900, 902-03 (1st Cir. 1974) ("That the plea was 'coerced by defense counsel' is a conclusion unbuttressed by specific facts. Appellant originally told the court 'this is a voluntary plea,' a representation he cannot now so easily repudiate.").

Petitioner's only specific allegation of coercion, made at the time of sentencing, was that the prosecutor indicated that petitioner would be sentenced to two years' imprisonment if he lost after trial. As the Supreme Court has explained, however, a guilty plea is not "compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the

certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Brady*, 397 U.S. at 751. Here, the mere possibility that petitioner would be sentenced to a term of imprisonment if convicted after trial does not render his plea is involuntary. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his involuntary plea claim.

### b. Innocence and Withdrawal

Petitioner also suggests that he should have been permitted to withdraw his plea because he is innocent of the charge for which he was convicted. Petitioner also claims that he is entitled to habeas relief because he is innocent of the crime to which he pleaded *nolo contendere*, and because he should have been permitted to withdraw his plea. This claim does not present a cognizable basis for habeas relief.

A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of new evidence, standing alone, is not a basis for granting the writ. As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id.* at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial.");

*Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Thus, the newly discovered evidence, standing alone, provides no basis for habeas relief.

Nor does petitioner's assertion of innocence after the plea was entered but prior to sentencing render involuntary his otherwise valid plea. As another court observed long ago, there are "no cases which hold that denial of guilt, under oath, subsequent to the entry of a guilty plea but prior to sentencing renders the plea involuntary as a matter of constitutional law." *Hansen v. Mathews*, 296 F. Supp. 1398, 1331 (E.D. Wis. 1969), *aff'd*, 424 F.2d 1205 (7th Cir. 1970). Although *Hansen* was decided nearly forty years ago, this observation holds true today. It is well established that "factual guilt or innocence . . . is irrelevant to the question of whether [a defendant's] plea was voluntary." *United States ex rel. Smith v. Johnson*, 403 F. Supp. 1381, 1397 n.28 (E.D. Pa. 1975), *aff'd*, 538 F.2d 322 (3d Cir. 1976); *see also*, *Stewart v. Peters*, 958 F.2d 1379, 1385 (7th Cir. 1992) ("A guilty plea is no more involuntary because the defendant believes he is innocent than the settlement of a civil lawsuit is involuntary because the defendant refuses to admit liability and may believe in all sincerity that he is not liable in the least."). Indeed, the Supreme Court has explicitly held that a criminal defendant may constitutionally enter a guilty plea even while protesting his innocence or declining to admit his commission of the crime. *See North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970).[4] "Because a trial court may accept a guilty plea even when it is coupled with a claim of

_____

[4]In *Alford*, the Court observed that it is appropriate to impose special safeguards when a defendant pleads guilty while maintaining his innocence to insure that the decision to plead guilty is an intelligent choice in light of the circumstances facing the defendant. *See Alford*, 400 U.S.

innocence, a fortiori a court is not required to permit withdrawal of that plea merely because a defendant belatedly asserts his innocence." *Gunn v. Kuhlman*, 479 F. Supp. 338, 344 (S.D.N.Y. 1979) (footnotes omitted).

Nor can petitioner show a denial of his constitutional rights by the trial court's failure to allow him to withdraw his plea. Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). A criminal defendant has no constitutional right to withdraw a validly and voluntarily entered guilty plea. *See Chene v. Abramajtys*, No. 95-1491, 1996 WL 34902, at *2 (6th Cir. Jan. 29, 1996); *Metcalf v. Bock*, No. 00-10361-BC, 2002 WL 31749157, at *5 (E.D. Mich. Dec. 5, 2002) (Lawson, J.); *Freeman v. Muncy*, 748 F. Supp. 423, 429 (E.D. Va. 1990); *Williams v. Smith*, 454 F. Supp. 692, 696 (W.D.N.Y. 1978), *aff'd*, 591 F.2d 169 (2d Cir. 1979). Thus, the trial court's failure to allow petitioner to withdraw his plea under the governing state court rules does not state a cognizable basis for habeas relief.

Further, even under the standard applicable to pleas in federal court under FED. R. CRIM. P. 11, petitioner cannot show that he would be entitled to withdrawal of his plea. Under this standard, a claim of innocence alone does not entitle a defendant to withdraw his plea; rather, withdrawal is permitted only in the "most compelling of circumstances indicating the innocence of the defendant." *United States v. Tolson*, 372 F. Supp. 2d 1, 24 (D.D.C. 2005), *aff'd*, ___ Fed. Appx. ___, 2008 WL 441764 (D.C. Cir. Jan. 25, 2008); *see also*, *United States v. Robinson*, 498 F. Supp. 2d 328, 331-32

---

at 38 n.10. Petitioner did not maintain his innocence at the time the plea was taken, and thus these special rules are inapplicable here.

(D.D.C. 2007). To be entitled to withdrawal, a "defendant must come forward with some evidentiary support for his innocence." *United States v. Abdelhadi*, 327 F. Supp. 2d 587, 595 (E.D. Va. 2004); *see also*, *United States v. Hodges*, 259 F.3d 655, 661 (7th Cir. 2001). Here, petitioner does not have any evidentiary support for his claim of innocence.

Petitioner's claim of innocence is based on his assertion that the personal protection order he was accused of violating had been rescinded, and because the subsequent personal protection order was not served on him. Under the aggravated stalking statute, the prosecution was required to prove that petitioner violated a court order. Specifically, in relevant part the statute provides that "stalking" is "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MICH. COMP. LAWS § 750.411i(1)(e). The statute further provides that "[a]n individual who engages in stalking is guilty of aggravated stalking if the violation involves any of the following circumstances: (a) At least 1 of the actions constituting the offense is in violation of a restraining order and the individual has received actual notice of that restraining order or at least 1 of the actions is in violation of an injunction or preliminary injunction." *Id*. § 750.411i(2)(a). Thus, in order to prove an aggravated stalking charge, the prosecution was required to show that at least one of the actions involved in the stalking was in violation of a restraining order.

At the outset, there was evidence presented at the preliminary examination that the second personal protection order was served on petitioner. In any event, regardless of whether this second personal protection order could form the basis of an aggravated stalking charge, petitioner's claim

14

is without merit. Petitioner contends that the first personal protection order was served on him on September 15, 2003, and terminated on September 23, 2003. And the victim testified that at least some acts in the pattern of stalking behavior occurred in that time period. *See* Prelim. Exam. Tr., at 15-16. It is irrelevant whether the bulk of the stalking activities occurred outside the time that this personal protection order was in effect; by its terms, the statue requires only that "[a]t least 1 of the actions constituting the offense is in violation of a restraining order." MICH. COMP. LAWS § 750.411i(2)(a). Importantly, much of petitioner's argument with respect to both the first and second personal protection orders focuses on the absence of any record of their appearance in the LEIN system. However, the aggravated stalking statute requires only notice of the personal protection order, not actual service. *See People v. Threatt*, 254 Mich. App. 504, 505-07, 657 N.W.2d 819, 820-21 (2002).

Further, it is clear that a mutual restraining order was issued on February 2, 2004, restraining both petitioner and the victim from contacting each other. Petitioner does not dispute the existence of this order, nor does he argue that he did not have notice of the order. Rather, petitioner's argument is only that this restraining order is not sufficient to trigger the aggravated stalking statute. However, petitioner cites no Michigan case law suggesting that only a personal protection order triggers the aggravated stalking statute, and the language of the statute itself simply refers to violation of a "restraining order." *See* MICH. COMP. LAWS § 750.411i(2)(a). For this reason, the district court rejected petitioner's argument and bound him over for trial, *see* Prelim. Exam. Tr., at 101-02, and the trial judge in denying petitioner's post-trial motions explicitly found that the mutual restraining order was in effect from February 2 through October 18, 2004, and that petitioner's violation of this restraining order was sufficient under the aggravated stalking statute, *see People*

*v. Gary*, No. 2004-199504-FH, at 1-2 (Oakland County, Mich., Cir. Ct. Feb. 14, 2007). This interpretation of the Michigan aggravated stalking statute by the state courts is binding here, *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws"), and thus petitioner's innocence claim is without merit.

In short, "[t]he fact that petitioner tried to back out of the 'bargain' by asserting his innocence after entering his plea . . . does not, per se, make the previously entered plea involuntary[, and his] allegation of innocence alone is not sufficient to compel the granting of a motion to withdraw a guilty plea." *Hansen*, 296 F. Supp. at 1331. Further, his claim of innocence standing alone provides no basis for habeas relief. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Antecedent Constitutional Claims*

Petitioner also raises a number of antecedent constitutional claims alleging violations of his rights occurring prior to the entry of his plea. Specifically, he claims that his arrest was illegal, the prosecutor suppressed exculpatory evidence, and his conviction violated his right to be free from double jeopardy.

At the outset, I note that petitioner's double jeopardy and illegal arrest claims are waived by his *nolo contendere* plea. "It is well-settled that an unconditional guilty plea constitutes a waiver of the right to appeal all nonjurisdictional antecedent rulings and cures all antecedent constitutional defects." *United States v. Lopez-Armenta*, 400 F.3d 1173, 1175 (9th Cir. 2005). As the Supreme

Court has explained:

> A guilty plea represents a break in the chain of events which had preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). It is equally well established that a double jeopardy claim is not jurisdictional. Rather, "the defense of double jeopardy is personal and is capable of waiver" and forfeiture. *United States v. Branham*, 97 F.3d 835, 842 (6th Cir. 1996) (citing *United States v. Broce*, 488 U.S. 563, 568 (1989)). Thus, petitioner's plea constitutes a waiver of his double jeopardy claim. *See Broce*, 488 U.S. at 573-74. Similarly, petitioner's plea constitutes a waiver of his Fourth Amendment claims. *See United States v. Villegas*, 388 F.3d 312, 322 (7th Cir. 2004); *United States v. Martinez-Orozco*, 52 Fed. Appx. 790, 792 (6th Cir. 2002).

In any event, for the reasons discussed below the Court should conclude that each of petitioner's claims is without merit.

1. *Illegal Arrest*

Petitioner first contends that his arrest on the aggravated stalking charge was illegal because there was no probable cause to support his arrest. This claim does not state a basis for habeas relief. It is an "established rule that illegal arrest or detention does not void a subsequent conviction." *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (citing *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886)). Thus, "although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein*, 420 U.S. at 119. Because petitioner is now incarcerated pursuant to a valid conviction, he cannot

challenge either the arrest leading to his incarceration or the preliminary procedures employed prior to his trial.

Petitioner alleges that his conviction was based on evidence obtained pursuant to his unlawful arrest. However, petitioner does not state what evidence was derived from his illegal arrest. The only evidence presented at the preliminary examination was the testimony of the victim and the arresting officer; there was no evidence derived from petitioner's arrest which was presented at the preliminary examination, and because petitioner pleaded no contest no such evidence was presented at trial. In any event, because "the exclusion of illegally seized evidence is simply a prophylactic device intended to deter Fourth Amendment violations by law enforcement officers," *Kaufman v. United States*, 394 U.S. 217, 224 (1969), the Supreme Court has determined that

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Stone v. Powell*, 428 U.S. 465, 482 (1976); *see also, Cardwell v. Taylor*, 461 U.S. 571, 571-72 (1983) (per curiam). Thus, petitioner's claim is not cognizable on habeas review if he had an adequate opportunity to present his claim to the state courts. "For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which to raise the claim and the presentation of the claim in this case must not have been frustrated by a failure of that mechanism." *Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985); *see also, Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *Willett v. Lockhart*, 37 F.3d 1271-72 (8th Cir. 1994). The requirement that there be, in the abstract, a mechanism by which to raise the Fourth Amendment claim "is met when state procedures provide a meaningful vehicle for a prisoner to raise a fourth amendment claim." *United States v. Scarborough*, 777 F.2d 175, 182 (4th Cir. 1985). Michigan provides such a

mechanism to raise and litigate Fourth Amendment claims, and there is no evidence that this mechanism was not available to petitioner in the state courts. *See Markham v. Smith*, 10 Fed. Appx. 323, 327 (6th Cir. 2001); *Machacek*, 213 F.3d at 952.

Thus, neither petitioner's allegedly illegal arrest nor the alleged subsequent use of evidence obtained as a result of that arrest provides a basis upon which a writ of habeas corpus may issue. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

2. *Suppression of Evidence*

Petitioner also contends that the prosecutor failed to disclose favorable evidence. The Due Process Clause requires the state to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601.

It is questionable whether petitioner's claim even states a constitutional violation, much less a violation of clearly established federal law under § 2254(d)(1). The Supreme Court has never held

that the *Brady* rule requires disclosure of exculpatory evidence prior to the entry of a plea, rather than for use at trial. On the contrary, the Supreme Court has repeatedly referenced the *Brady* rule as necessary to secure a fair trial before the fact finder. In *Brady* itself the Court explained that "[a] prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him . . . helps *shape a trial* that bears heavily on the accused." *Brady*, 373 U.S. at 87-88 (emphasis added). In *United States v. Agurs*, 427 U.S. 97 (1976), the Court explained that the rule prohibiting the use of perjured testimony, upon which the *Brady* rule is founded, is based on the notion that the use of perjured testimony represents "a corruption of the truth-seeking function of the trial process." *Id*. at 104. Similarly, in *United States v. Bagley*, 473 U.S. 667 (1985), the Court explained that "suppression of evidence amounts to a constitutional violation *only* if it deprives the defendant of a *fair trial*." *Id*. at 678 (emphasis added). Finally, in *Strickler* the Court explained that, "strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different *verdict*." *Strickler*, 527 U.S. at 281 (emphasis added).

In light of this focus on the effects of suppressing evidence on the truth-finding function of the jury at trial, several courts have held that the failure to disclose exculpatory information prior to the taking of a plea does not render the plea involuntary or constitute a *Brady* violation. The reasoning of this rule was aptly explained by the Fifth Circuit: "Because a *Brady* violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of guilt, it follows that the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to a trial is not a constitutional violation." *Matthew v. Johnson*, 201 F.3d 353, 361-62 (5th Cir. 2000). To be sure, other courts have reached a contrary conclusion, including the Sixth

Circuit. *See , e.g.*, *Sanchez v. United State*, 50 F.3d 1448, 1453-54 (9th Cir. 1995); *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998); *Campbell v. Marshall*, 769 F.2d 314, 324 (6th Cir. 1985). The continued validity of these cases, however, is called into question by the Supreme Court's more recent decision in *United States v. Ruiz*, 536 U.S. 622 (2002). In that case, the Court held that a plea is not rendered invalid by the prosecutor's failure to disclosure exculpatory impeachment information prior to the entry of the plea. *See id*. at 628-33. While the Court expressly declined to consider whether this rule also applied to exculpatory substantive evidence,[5] the Court's reasoning focuses on the *Brady* rule's connection to the truth-finding function of the trial, suggesting that the holding in *Ruiz* extends to exculpatory substantive evidence as well. Indeed, at some points the Court did not distinguish between the two types of exculpatory evidence, going so far as to note that "due process considerations, the very same considerations that led this Court to find trial related rights to exculpatory and impeachment information in *Brady* and *Giglio*, argue against the existence of the 'right'" to pre-plea disclosure. *Ruiz*, 536 U.S. at 631.

More importantly, even if the court of appeals cases recognizing such a right survive *Ruiz*, those cases alone cannot provide a right to habeas relief. Under § 2254, habeas relief is available only if the state courts violated clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1). In light of the reasoning of *Ruiz*, the Court's repeated description of *Brady* as grounded in the right to a fair trial, the lack of any Supreme Court precedent requiring *Brady* material to be disclosed prior to the entry of a guilty plea, and the split among the courts of appeals on this issue, it cannot be said that the right petitioner seeks to invoke here constitutes

---

[5]Justice Thomas, concurring in the judgment, saw no reason to distinguish between exculpatory substantive evidence and exculpatory impeachment evidence. *See Ruiz*, 536 U.S. at 633-34 (Thomas, J., concurring in the judgment).

clearly established law under § 2254(d)(1).  *See Jones v. Bryant*, 27 Fed. Appx. 699, 701 (7th Cir. 2001).

Further, even assuming that such a claim is viable, petitioner cannot establish a *Brady* violation here or show that the alleged suppression of the videotape affected his decision to plead guilty.  As the Sixth Circuit explained in *Campbell*, suppression renders a plea involuntary only where the suppressed evidence "would have been controlling in the decision whether to plead." *Campbell*, 769 F.2d at 324.  "Moreover, a state's failure to disclose potentially exculpatory evidence does not render the plea involuntary when the belated disclosure of this information does not detract from the credible factual basis for the habeas petitioner's otherwise voluntary and consensual plea." *Giegler v. Trombley*, No. 03-CV-70962, 2003 WL 22480131, at *5 (E.D. Mich. Oct. 15, 2003) (Roberts, J.) (citing *Campbell*, 769 F.2d at 321; *Swingle v. Money*, 215 F. Supp. 2d at 919, 924 (N.D. Ohio 2002).  Here, petitioner has not identified with specificity any particular exculpatory evidence that was suppressed by the prosecution, or how the disclosure of such evidence would have affected his decision to plead guilty.  "Conclusory allegations that the government 'suppressed' or 'concealed' evidence do not entitle [petitioner] to relief; nor do they suffice to entitle [petitioner] to an evidentiary hearing on whether documents were withheld." *Harris v. United States*, 9 F. Supp. 2d 246, 275 (S.D.N.Y. 1998), *aff'd*, 216 F.3d 1072 (2d Cir. 2000); *see also*, *United States v. Winkelman*, 548 F. Supp. 2d 142, 153 (M.D. Pa. 2008).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.    *Double Jeopardy*

Petitioner also contends that his conviction violates his right to be free from double jeopardy. Specifically, petitioner argues that the acts used to support his aggravated stalking conviction had

previously been used to hold him in contempt of court for violation a personal protection order. At the plea hearing, petitioner's counsel explained that there was no double jeopardy violation because the contempt proceeding was a civil proceeding, and the trial court agreed with counsel's analysis of the issue. The trial court's determination was a reasonable application of clearly established federal law, and thus petitioner is not entitled to habeas relief on this claim.

The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Double Jeopardy Clause, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted). "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).

As noted above, the Double Jeopardy Clause prohibits a state from punishing a defendant twice for the same "offense." However, "[f]or constitutional purposes, it makes no difference that the separate charges against [petitioner] grew out of the same transaction." *Smith v. Sowders*, 848 F.2d 735, 739 (6th Cir. 1988). "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) (citations omitted). Thus, the question is whether the Michigan Legislature intended that

the conduct giving rise to a civil contempt proceeding also give rise to separate criminal liability under the aggravated stalking statute; if so, the "court's inquiry is at an end" and there is no double jeopardy violation. *Id*. at 499 n.8. In making this determination, the Court is bound by the Michigan courts' interpretation of state law. *See Rodgers v. Bock*, 49 Fed. Appx. 596, 597 (6th Cir. 2002); *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

Here, the Court need not divine the answer to this question, as the Michigan Legislature made its intent plain in the aggravated stalking statute: "A criminal penalty provided for under this section may be imposed in addition to any penalty that may be imposed for any other criminal offense arising from the same conduct or for contempt of court arising from the same conduct." MICH. COMP. LAWS § 750.411i(6). Likewise, the personal protection order statutes provide that the criminal contempt that may be imposed for violation of a personal protection order is in addition to any other criminal punishment that may be imposed for the conduct. *See* MICH. COMP. LAWS §§ 600.2950(23), 600.2950a(20). Because the legislature intended for petitioner's condut to be punished as both criminal contempt and aggravated stalking, there is no double jeopardy violation. *See Smith v. Stegall*, No. 02-10211-BC, 2003 WL 21434922, at *3-*4 (E.D. Mich. June 18, 2003) (Lawson, J.); *People v. Coones*, 216 Mich. App. 721, 728, 550 N.W.2d 600, 603 (1996). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.     *Ineffective Assistance of Counsel Claim*

Finally, petitioner contends that his trial counsel rendered constitutionally deficient performance. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect

the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed  questions of law and fact.  *See id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance.  *See id*.  at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id*. at 695.  Where, as here, a petitioner challenges counsel's effectiveness with respect to a guilty plea, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to

trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also*, *O'Hara*, 24 F.3d at 828. However, with

respect to the prejudice prong it is not enough for petitioner to merely allege that she would have

insisted on going to trial had counsel properly advised him. As other judges of this Court have

explained:

> In the guilty plea context the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Furthermore, this determination depends in large part on a prediction of what the outcome of a trial might have been. *Id.* at 58-60, 106 S.Ct. 366; *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.1994). In other words, the petitioner must show that, but for counsel's errors, he would not have pleaded guilty, because there would have been at least a reasonable chance he would have been acquitted. If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him. A petitioner's conclusory allegation that, but for an alleged attorney act or omission, he would not have pleaded guilty is not enough to prove such a claim. Petitioner must show that there is a reasonable probability that the result of the proceeding would have been different. It is not sufficient to show that, but for counsel's alleged errors he would have been convicted after a trial instead of after entering a guilty plea.

*Garrison v. Elo*, 156 F. Supp 2d 815, 829 (E.D. Mich. 2001) (O'Meara, J.); *see also*, *Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 655 (E.D. Mich. 2002) (Friedman, J.) (same); *Holtgreive v. Curtis*, 174 F. Supp. 2d 572, 587 (E.D. Mich. 2001) (Hood, J.) ("If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him.").

2. *Analysis*

Petitioner contends that his counsel was constitutionally deficient because counsel did not

conduct an investigation, contact witnesses, or file pretrial motions. However, petitioner does not

identify with specificity any witnesses counsel should have interviewed, any avenues of

investigation counsel should have pursued, or any specific motions that counsel should have filed.

Petitioner's conclusory allegations are insufficient to establish that counsel was ineffective. *See Dell v. Straub*, 194 F. Supp. 2d 629, 650 (E.D. Mich. 2002) (Friedman, J.); *Matura v. United States*, 875 F. Supp. 235, 237-38 (S.D.N.Y. 1995). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by

motion and order such page limit is extended by the Court. The response shall address specifically,

and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE
Dated: 7/30/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on July 30, 2008.

                    s/Eddrey Butts
                    Case Manager